15-1015-bk
*In re Adelphia Commc'ns Corp.*


UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of June, two thousand and sixteen.

Present:
> PETER W. HALL,
> GERARD E. LYNCH,
> DENNY CHIN,
> > *Circuit Judges.*

_____

IN RE: ADELPHIA COMMUNICATIONS CORP.,

> *Debtor.*

_____

ADELPHIA RECOVERY TRUST,
> *Plaintiff-Appellant,*

ADELPHIA COMMUNICATIONS CORP., OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF
ADELPHIA COMMUNICATIONS CORP., ADELPHIA
CABLEVISION, L.L.C.,
> *Plaintiffs,*

> v.                                                                                    15-1015-bk

FPL GROUP, INC., WEST BOCA SECURITY, INC.,
> *Defendants-Appellees.*

_____

1

For Plaintiff-Appellant:                    DAVID M. FRIEDMAN, Michael C. Harwood
                                            (on the brief), Kasowitz, Benson, Torres &
                                            Friedman LLP, New York, New York.

For Defendants-Appellees:                   GEORGE A. ZIMMERMAN, Jonathan L. Frank
                                            (on the brief), Skadden, Arps, Slate,
                                            Meagher & Flom LLP, New York, New
                                            York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

This dispute arises out of the Chapter 11 reorganization of Adelphia Communications Corp. ("Adelphia"), formerly one of the largest cable companies in the United States, and 232 of its affiliates. Plaintiff-Appellant Adelphia Recovery Trust ("Recovery Trust"), successor to Adelphia's rights, seeks to recover as a fraudulent transfer some $150 million paid by Adelphia to defendants-appellees FPL Group, Inc. and West Boca Security, Inc. for the repurchase of Adelphia's own stock. Following a four-day bench trial, the United States Bankruptcy Court for the Southern District of New York submitted proposed findings of fact and conclusions of law rejecting Recovery Trust's claim, and the district court, after considering those findings and conclusions *de novo* under 28 U.S.C. § 157(c)(1), entered judgment against Recovery Trust. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On appeal from a district court's judgment entered after a bankruptcy court's submission of proposed findings of fact and conclusions of law, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Waldman v. Stone*, 698 F.3d 910,

922 (6th Cir. 2012); *see also APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 110 (2d Cir. 2010). Generally "adequacy of capital presents a mixed question of law and fact." *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992). To the extent that arguments concerning adequacy of capital are mostly or entirely fact-based, however, we review the district court's relevant factual findings for clear error. *See Guzzo v. Cristofano*, 719 F.3d 100, 109 (2d Cir. 2013) ("essentially factual" component of mixed question of law and fact reviewed for clear error).

At trial Recovery Trust attempted to prove that the stock repurchase transaction was a constructive fraudulent conveyance under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. § 5104(a)(2).[1] Pursuant to these provisions a trustee may avoid any transfer of an interest of the debtor if (1) the property is transferred for less than fair consideration and (2) either (a) the debtor was insolvent on the date of the transfer or (b) the debtor's remaining assets were unreasonably small in relation to the transaction. *Id.* The sole issue presented on appeal is whether the district court erred in finding that Adelphia's assets were not "unreasonably small" at the time of the challenged transfer.

The term "unreasonably small" is not defined in PUFTA, but courts have interpreted the term to describe a situation where a transaction leaves a debtor "technically solvent but doomed to fail." *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913,

---

[1] Recovery Trust brought a claim under 11 U.S.C. § 544(b), which allows it to avoid any transfer under applicable state law, and it is undisputed that Pennsylvania law applies to the challenged transaction. We therefore rely primarily on the language of and official Bar Association Comments to PUFTA, as well as on the Third Circuit's seminal decision in *Moody*, which interpreted the substantially similar predecessor statute to PUFTA, *see Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 282 (2d Cir. 1981) (recognizing, in the absence of a controlling decision of the highest court of the state whose law the Second Circuit is tasked with interpreting, "the authoritativeness of decisions on the law of a particular state rendered by the court of appeals for the circuit in which the state is located"). Because courts construe PUFTA consistently with the provisions of the Bankruptcy Code that address constructive fraudulent transfers, however, *see, e.g.*, *Carroll v. Stettler*, 941 F. Supp. 2d 572, 582 n.16 (E.D. Pa. 2013), we also rely, as did the district court and as do both parties in this case, on decisions of other federal courts interpreting relevant provisions of the Bankruptcy Code.

944 (S.D.N.Y. 1995) (citing *Moody*, 971 F.2d at 1070 & n.22).  The test for whether assets are "unreasonably small" focuses on reasonable foreseeability, *see Moody*, 971 F.2d at 1073, and is satisfied if at the time of the transaction the debtor had such minimal assets that insolvency was inevitable in the reasonably foreseeable future.  *See Fid. Bond and Mortg. Co. v. Brand*, 371 B.R. 708, 723 (Bankr. E.D. Pa. 2007) (citing *Moody*, 971 F.2d at 1073).  To determine the reasonably foreseeable financial future of a corporate debtor such as Adelphia, courts examine an array of factors including the company's "debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue." *MFS/Sun Life Tr.*, 910 F. Supp. at 944.  Also relevant are "all reasonably anticipated sources of operating funds, which may include new equity infusions, cash from operations, or cash from secured or unsecured loans over the relevant time period." *Moody*, 971 F.2d at 1072 n.24 (quotation omitted).

The Bar Association Comments to PUFTA suggest that an analysis under the unreasonably small assets provision must "tak[e] into account, among other things, the debtor's present and prospective debts, and whether the retained assets are sufficiently liquid to enable the debtor to pay such debts as they become due."  12 Pa. Cons. Stat. § 5104, Bar Ass'n cmt. 4; *see also In re Jackson*, 459 F.3d 117, 123 (1st Cir. 2006) (noting that under New Hampshire's identical unreasonably small assets provision courts should consider debtor's ability to "generate enough cash from operations and sales of assets to pay its debts and remain financially stable" after the challenged transfer (quotation omitted)).  More specifically:

> Among other matters, appropriate weight should be given to the likelihood that maturing debts will be refinanced where, on the basis of the debtor's financial condition and future prospects and the general availability of credit to debtors similarly situated, it is reasonable to assume that such refinancing may be accomplished; appropriate weight should be given to the debtor's ability to pay debts by disposing of fixed assets or other transactions outside the ordinary course of business; and appropriate allowance should be made for reasonably foreseeable contingent obligations as they become absolute.

12 Pa. Cons. Stat. § 5104, Bar Ass'n cmt. 4. Applying these guides, courts do not evaluate the financial condition of the debtor in isolation; they compare the subject company to peers in its industry. *See Fid. Bond & Mortg. Co.*, 371 B.R. at 728.

As an initial matter, we reject Recovery Trust's argument that the district court improperly conflated its analysis of Adelphia's solvency with its evaluation of whether Adelphia had unreasonably small capital. Courts have recognized that these concepts are "conceptually distinct," but overlap. *Moody*, 971 F.2d at 1069-71 (citing *Fid. Tr. Co. v. Union Nat'l Bank*, 169 A. 209, 215 (Pa. 1933)). Thus, "adequacy of capital is typically a major component of any solvency analysis." *Id.* at 1071 (holding district court did not err in considering whether the challenged transaction left the debtor with unreasonably small capital in conjunction with whether it rendered the company insolvent). The district court in this case analyzed Adelphia's solvency separately from the adequacy of its capital. Adhering to precedent cited affirmatively by both parties, the court properly relied on some of the same key facts to support its findings on both of these issues.

Recovery Trust's remaining arguments are essentially factual in nature. It is undisputed that at the time of the challenged transfer Adelphia needed approximately $600 million to meet its capital needs over the next three years and that this transfer still left the company with an equity cushion of approximately $2.5 billion. In its brief on appeal Recovery Trust highlights evidence it had presented about Adelphia's financial condition—e.g., that Adelphia had

5

exceeded its maximum leverage ratio under its debt instruments as of January 1999, that it had a negative cash flow, that it was beset by ongoing fraud within the company, and that it was already in default under its existing bond indentures. Recovery Trust claims this evidence was sufficient to sustain its burden of showing that Adelphia was inadequately capitalized. The bankruptcy court and the district court, however, considered this evidence and still found, in spite of these troubling indications, that Adelphia could have sold off enough of its assets or alternatively obtained sufficient credit to continue its business for the foreseeable future. *Cf. In re Parker*, No. 12-03128-8-SWH, 2015 WL 4747536, at \*10 (Bankr. E.D.N.C. Aug. 10, 2015) (finding claim of unreasonably small assets belied by financial statements showing assets worth more than double the amount of liabilities); *In re Summit Place, LLC*, 298 B.R. 62, 74 (Bankr. W.D.N.C. 2002) (valuable real estate asset and recent loan commitment supported finding that debtor would be able to pay debts as they became due and did not have unreasonably small assets). This finding is amply supported by the declarations and trial testimony of defendants' experts, which showed, *inter alia*, that similarly-situated companies in the cable industry were able to access capital markets despite having negative cash flows and/or having high leverage ratios, and that numerous other companies obtained access to capital markets after disclosing a fraud. *See* 12 Pa. Cons. Stat. § 5104, Bar Ass'n cmt. 4 (noting that courts should consider "general availability of credit to debtors similarly situated"). Ultimately, the record demonstrates that the issue of adequate capitalization came down to a battle of experts. We cannot say that the district court clearly erred in accepting as more persuasive the evidence presented by defendants' experts.

We have considered all of Recovery Trust's arguments and conclude that they are without merit.  We therefore **AFFIRM** the judgment of the district court.


                                      FOR THE COURT:
                                      Catherine O'Hagan Wolfe, Clerk